UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDDIN MAURICIO MARIN PORTILLO,

                        Petitioner,

        -v-

THOMAS DECKER, *et al.*,

                        Respondents.

21 Civ. 9506 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

      Eddin Mauricio Marin Portillo petitions for a writ of habeas corpus, pursuant to 28

U.S.C. § 2241. A noncitizen subject to a final order of removal, Portillo has been detained in

Orange County Jail in Goshen, New York, since March 2, 2021. Portillo seeks release from

detention pending resolution of a petition for review he has filed in the United States Court of

Appeals for the Second Circuit, in which he challenges administrative determinations that he

cannot claim to reasonably fear harm were he to return to his home country of Honduras. For the

reasons below, the Court denies Portillo's habeas petition.

I.      **Background**[1]

      **A.**      **Immigration, Criminal, and Administrative Background**

      Portillo is a citizen and national of Honduras. Pardo-Figueroa Decl. ¶ 3. On an

unspecified date, Portillo entered the United States without inspection, admission, or parole. *Id.*

¶ 4. On April 23, 2007, Portillo was ordered removed by an immigration judge in Imperial,

California. *Id.* ¶ 5. On May 9, 2007, Immigration and Customs Enforcement ("ICE") removed

---

[1] The factual account below draws primarily from Portillo's administrative file, excerpts of
which were provided to the United States Attorney's Office for the Southern District of New
York, *see* Dkt. 5, and exhibits attached thereto, and the declaration of deportation officer Mayra
Pardo-Figueroa, *see* Dkt. 6 ("Pardo-Figueroa Decl.").

Portillo to Honduras, pursuant to that order. *Id.* After his 2007 removal, Portillo again illegally reentered the United States at an unknown place and time. *Id.* ¶ 6.

On March 27, 2016, in the Village of Port Chester, New York, Portillo was arrested and charged with third-degree burglary and possession of burglars' tools, in violation of New York state law, in connection with incidents that occurred on February 19 and 23, 2015. *Id.* ¶ 7. On March 28, 2016, Portillo was charged with a different instance of third-degree burglary, in violation of New York state law, in connection with an incident that occurred November 15, 2015. *Id.* ¶ 8. On February 13, 2017, a grand jury indicted Portillo on the above charges, and on October 3, 2017, the separate indictments for the alleged crimes were consolidated under a single indictment number. *Id.* ¶¶ 7–8. On November 22, 2017, after Portillo failed to appear on the above charges, the Westchester County Court issued a bench warrant for his arrest. *Id.* ¶ 9.

On January 8, 2018, in Port Chester, New York, ICE agents arrested and detained Portillo based on the earlier final removal order. *Id.* ¶ 10. On January 22, 2018, ICE obtained travel documents to effectuate Portillo's removal to Honduras, and on January 31, 2018, ICE removed him there. *Id.*

At an unknown date and place after his 2018 removal, Portillo again illegally reentered the United States. *Id.* ¶ 11. On September 20, 2019, Portillo was returned to Westchester County Court on the bench warrant that had issued based on the criminal burglary charges. *Id.*[2] On December 17, 2019, Portillo pled guilty to third-degree burglary, and on October 20, 2020, was sentenced to a prison term of 16 months to four years in state prison. *Id.* ¶ 12. On March 2, 2021, Portillo completed his sentence. *Id.* ¶ 13.

---

[2] It is unclear whether Portillo voluntarily returned to court or was arrested and produced there.

That same day, ICE took Portillo into custody and served him a Notice of Intent/Decision to Reinstate Prior Order. *Id.* Also on March 2, 2021, after Portillo claimed a fear of returning to Honduras, he was referred to an asylum officer from the United States Citizenship and Immigration Services ("USCIS") for a reasonable fear interview. *Id.* On March 15, 2021, the asylum officer conducted that interview, and found that Portillo had not established a reasonable fear of harm should he be removed to Honduras. *Id.* ¶ 14. After Portillo requested that an immigration judge review that determination, on March 17, 2021, ICE referred the matter to the Varick Street Immigration Court in New York, New York. *Id.* ¶ 15. On April 5, 2021, after a video teleconference hearing, the immigration judge upheld the asylum officer's negative reasonable fear determination and returned the case to ICE, to arrange for Portillo's removal to Honduras. *Id.* ¶ 16. Shortly thereafter, ICE initiated removal plans for Portillo. *Id.* ¶ 17.

On April 15 and 18, 2021, respectively, Portillo filed, in the United States Court of Appeals for the Second Circuit, (1) a petition for review of the determinations that he had not established reasonable fear and (2) a motion to stay removal. *Id.*; *see Portillo v. Garland*, No. 21-6228 (2d Cir.) Dkts. 4, 8. Consistent with the Government's "forbearance policy," ICE informally committed to holding off on removing Portillo until the Circuit ruled on the motion to stay removal. *See* Dkt. 7 ("Gov. Opp'n") at 11 n.4.

The Government expects to "promptly obtain travel documents for . . . Portillo once the Second Circuit addresses his petition for review or denies his stay motion." Pardo-Figueroa Decl. ¶ 23. That expectation is based on recent experience: the Government "routinely obtains travel documents for natives and citizens of Honduras, and it frequently schedules charter flights to remove noncitizens to Honduras." *Id.* And ICE "has previously obtained travel documents to

effectuate removal to Honduras for Marin Portillo." *Id.* While Portillo is detained, ICE will "continue to periodically review" his detention and conduct post-order custody reviews. *Id.* ¶ 24.

On July 19, 2021, Portillo submitted to ICE a request for release from detention subject to ankle monitoring; on July 28, 2021, ICE denied the request on the ground that Portillo was an enforcement priority. *Id.* ¶ 19; *see* Dkt. 5-6. On July 30, 2021, after a 90-day post-order custody review of Portillo's detention, the New York Field Office of ICE's Office of Enforcement and Removal Operations ("ICE ERO-NYC") issued a "Decision to Continue Detention." *See* Dkt. 5-5. It held that, in light of Portillo's immigration and criminal history, his continued ICE custody pending removal from the United States was warranted. *Id.* at 1–2.

On September 4, 2021, ICE ERO-NYC conducted a 180-day post-order custody review of Portillo's detention, which included an interview of Portillo and his counsel by an ICE ERO-NYC panel. Pardo-Figueroa Decl. ¶ 20. On September 9, 2021, ICE ERO-NYC determined that Portillo should remain detained pending removal, noting, again, that he was an enforcement priority who warranted continued detention. *Id.* On February 24, 2022, ICE ERO Headquarters issued a decision to continue detention, noting that "ICE is unable to conclude that the factors set forth at 8 C.F.R. § 241.4(e) have been satisfied."[3] Dkt. 9-1 at 1. On March 3, 2022, ICE served the decision on Portillo. *Id.* at 2.

On November 16, 2021, Portillo submitted to ICE another request for release. His request did not set out any new information in support of release. Pardo-Figueroa Decl. ¶ 21. That same day, ICE denied the request on the ground that Portillo had not identified any new

---

[3] Section 241.4(e) requires ICE to conclude, prior to making a recommendation or decision to release a detainee, that travel documents are not available or that removal is against the public interest or impracticable, and that the detainee is nonviolent, likely to remain nonviolent, unlikely to pose a threat to the community, unlikely to violate conditions of release, and does not pose a significant flight risk.

facts or circumstances. In conveying this outcome to Portillo's counsel, it attached a copy of its previous denial of Portillo's request for release, dated July 28, 2021. *Id.*

**B.     Status of Portillo's Petition for Review in the Second Circuit**

As noted, in April 2021, Portillo filed in the Second Circuit a petition for review of ICE's negative determinations on his claim of reasonable fear, and a motion to stay removal. Briefing on the motion to stay appears to have completed on June 16, 2021. *See Portillo*, No. 21-6228, at Dkt. 31 (docket entry indicating that, on June 16, 2021, Portillo filed a reply to the Government's opposition to his motion to stay). On November 17, 2021, Portillo filed a brief in support of his petition for review; on February 16, 2022, the Government filed its opposition. *See Portillo*, No. 21-6228, Dkts. 38, 45. The Circuit has not yet resolved Portillo's petition for review or motion to stay removal.[4]

**C.     Portillo's Action in this Court**

On November 17, 2021, Portillo filed in this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking his release pending the Circuit's resolution of his petition for review. Dkt. 1 ("Pet."). On February 1, 2022, the parties submitted a joint letter setting a briefing schedule and requesting expedited consideration of the habeas petition. Dkt. 3. The Court granted the request. Dkt. 4. On February 3, 2022, the Government filed its opposition to the habeas petition. Dkt. 7. On February 14, 2022, Portillo filed his reply. Dkt. 8 ("Reply").

---

[4] On December 10, 2021, the Government moved to expedite a decision on Portillo's motion to stay. It informed the Second Circuit that, after December 30, 2021, it would no longer forbear Portillo's removal. Pardo-Figueroa Decl. ¶ 22. On December 20, 2021, the Second Circuit issued a temporary stay of removal pending resolution of Portillo's petition for review. *Id.*; *see* Dkt. 5-7.

## II.      Jurisdiction and Venue

This Court has subject matter jurisdiction to hear Portillo's petition for a writ of habeas corpus under 28 U.S.C. § 2241. *See Rodriguez Sanchez v. Decker*, No. 18 Civ. 8798 (AJN), 2019 WL 3840977, at *4 (S.D.N.Y. Aug. 15, 2019) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004)).  Venue is proper in this District because Portillo is being detained in Orange County Jail in Goshen, New York, which is within this District. *See* 28 U.S.C. § 2241(d) ("[T]he application may be filed in the district court for the district wherein such person is in custody."); *see also Almazo v. Decker*, No. 18 Civ. 9941 (PAE), 2018 WL 5919523 (S.D.N.Y. Nov. 13, 2018); *Rodriguez Sanchez*, 2019 WL 3840977, at *4 ("Thus, the proper district for a core habeas claim is the district that has territorial jurisdiction over the proper respondent.") (internal quotation marks omitted); *id.* ("Because [Decker] is the proper respondent and is subject to this Court's jurisdiction, Petitioner's habeas petition is properly before this Court.").

## III.      Legal Standard

Title 8 U.S.C. § 1231(a) governs the detention of removable noncitizens.  Section 1231(a)(1) gives the Attorney General 90 days to remove from the United States a noncitizen ordered removed.  But 90 days is not a hard and fast deadline for removal.  Section 1231(a)(6) authorizes the Attorney General to detain certain categories of removable noncitizens for longer than the 90-day statutory removal period. *See Zadvydas v. Davis*, 533 U.S. 678, 688–89 (2001); *Reynoso v. Aviles*, 87 F. Supp. 3d 549, 562 (S.D.N.Y. 2015).  It is undisputed that Portillo fits within at least one, if not more, or these categories, including based on his criminal record.[5]

---

[5] *See* 8 U.S.C. § 1231(a)(6); 8 C.F.R. § 241.4(a); *Zadvydas*, 533 U.S. at 688 ("The post-removal-period detention statute applies to certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well

Because Section 1231(a)(6), on its face, appears to authorize the indefinite detention of certain classes of noncitizens, the Supreme Court has "interpret[ed] the statute to avoid a serious constitutional threat" and held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *Zadvydas*, 533 U.S. at 699. In so holding, the Court recognized a "presumptively reasonable period of detention" of six months. *Id.* at 701; *see also Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003). "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Regulations codified at 8 C.F.R. § 241.4 generally govern the continued detention of qualifying noncitizens following the 90-day removal period. Pursuant to those, ICE conducts a custody review (1) prior to the completion of the 90-day removal period, (2) again at 180 days of detention, and (3) thereafter annually or whenever there has been a material change in circumstances since the last annual review. *See* 8 C.F.R. § 241.4(k)(1)–(2). In such reviews, ICE makes a discretionary decision whether continued detention is justified, based on numerous factors including, *inter alia*, a detainee's flight risk and risk of committing future crimes. *See id.* § 241.4(f). Regulations codified at 8 C.F.R. § 241.13 implement the holding in *Zadvydas*. Under those, a noncitizen who provides "good reason to believe there is no significant likelihood of removal . . . in the reasonably foreseeable future" is entitled to agency review of as much. *Id.* § 241.13(a). If the agency finds that there is no significant likelihood of removal, the noncitizen must be released, unless special circumstances justify continued detention. *Id.* § 241.13(g)(1);

---

as any alien who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.") (internal quotation marks omitted). Portillo does not dispute that he meets this threshold requirement.

*see id.* § 241.14. Conversely, if there is a significant likelihood of removal in the reasonably foreseeable future, the noncitizen must continue to be detained, subject to the general procedural framework governing the detention of noncitizens after the 90-day removal period, as set forth in 8 C.F.R. § 241.4. *See id.* § 241.13(b)(1), (g)(2).

## IV.    Discussion[6]

### A.    Statutory Challenge

Portillo first argues that his detention is unlawful under *Zadvydas* because his release is not reasonably foreseeable. As of the date of this decision, Portillo has been detained for more than a year—well beyond the general 90-day removal period and presumptively reasonable six-month period of detention authorized for noncitizens detained under 8 U.S.C. § 1231(a)(6). *See Zadvydas*, 533 U.S. at 701.

A detention of this length of time does not, however, alone establish a violation of a noncitizen's rights under *Zadvydas*. *See Callender v. Shanahan*, 281 F. Supp. 3d 428, 436 (S.D.N.Y. 2017) ("Regardless of the length of the detention to date, '*Zadvydas* places the burden of proving that there is no significant likelihood of removal in the reasonably foreseeable future on the alien.'") (quoting *Agoro v. Dist. Dir. for Immigr. Custom Enf't*, No. 09 Civ. 8111 (SAS), 2010 WL 9976, at *4 (S.D.N.Y. Jan. 4, 2010), *aff'd*, 403 F. App'x 536 (2d Cir.) (summary

---

[6] On the grounds reviewed below, Portillo seeks, as relief, either his immediate release from custody or, in the alternative, a bond hearing "at which ICE bears the burden to show through clear and convincing evidence that [Portillo] is a [flight risk or] danger to society." Pet. ¶ 14; *see* Reply at 7. But as the Government correctly notes, the remedy of a release on bond—available to certain noncitizens whose removal proceedings are ongoing, *see* 8 U.S.C. § 1226(a)—is unavailable to noncitizens like Portillo who have already been ordered removed, *see* 8 U.S.C. § 1231(a)(1)(A); *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2280 (2021) ("We conclude that § 1231, not § 1226, governs the detention of [noncitizens] subject to reinstated orders of removal, meaning those [noncitizens] are not entitled to a bond hearing while they pursue withholding of removal.").

order)); *see also Leslie v. Mule*, 423 F. App'x 29, 30 (2d Cir. 2011) (summary order) (affirming denial of habeas petition notwithstanding noncitizen's having been detained "well beyond the six-month period found presumptively reasonable"). The issue is whether Portillo's removal is reasonably foreseeable.

It clearly is. The Government has persuasively shown that it stands at the ready to remove Portillo once court-authorized to do so. It avers—and Portillo does not contest—that the United States (1) maintains diplomatic relations with Honduras and regularly removes noncitizens there via chartered flights, (2) has removed Portillo to Honduras on two prior occasions, each of which occurred within one month of his having been ordered removed, and (3) expects to promptly obtain travel documents for Portillo—as it has multiple times before— upon the Second Circuit's resolution of Portillo's pending appeal in the Government's favor. *See* Pardo-Figueroa Decl. ¶¶ 10, 23; Reply at 5 ("[Portillo] does not dispute the government's claim that it is able to effect his removal to Honduras if the Second Circuit does not grant his petition for review."). Indeed, ICE had already initiated removal plans for Portillo shortly after, in April 2021, the asylum officer and immigration judge found that he lacked a reasonable fear of harm upon return to Honduras. Pardo-Figueroa Decl. ¶¶ 16–17.

The reason ICE did not immediately follow through with those removal plans was that Portillo filed a petition for review and a motion to stay in the Second Circuit. Those filings led the Government, pursuant to its forbearance policy, to hold off on removing Portillo until after the Circuit ruled (and then, only if it ruled in the Government's favor). Portillo's petition and motion before the Circuit remain pending. And, after ICE notified the Circuit that it planned to cease forbearing on Portillo's removal after December 30, 2021, the Circuit, on December 10, 2021, granted Portillo a temporary stay of removal. The upshot of this history is that the only

thing that appears to be holding up Portillo's removal is the litigation in the Second Circuit—which he brought himself.

For obvious reasons, a noncitizen's use of the American judicial process, to the extent it delays removal, does not warrant release under *Zadvydas*. *See, e.g.*, *Guangzu Zheng v. Decker*, 618 F. App'x 26, 28 (2d Cir. 2015) (summary order) ("[T]he Government has been prevented from removing Zheng by the BIA's stay of removal (sought by Zheng) and by its own forbearance policy (also resulting from Zheng's pursuit of an additional stay). If this Court denies Zheng's petition for review and pending stay motion, the Government can seek another travel document. Given this record, Zheng has not provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.") (internal quotation marks omitted); *Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) (summary order) (terming delay attendant to noncitizen's filing of numerous petitions a "self-inflicted wound" that did not entitle him to release under *Zadvydas*); *Agoro*, 2010 WL 9976, at *5 ("Agoro has failed to prove that there is no significant likelihood that he will be removed in the reasonably foreseeable future. Given that ICE has twice procured travel documents for Agoro, there is a significant likelihood that ICE will be able to procure another travel document for Agoro when he no longer has litigation pending in United States courts.").

Portillo speculates that the Second Circuit may not decide his petition before its summer recess. *See* Reply at 5. But even if that conjecture were to prove prescient, that would not make Portillo's removal not "reasonably foreseeable" under *Zadvydas*. The petitioners there faced the prospect of indefinite detention in the United States because, for multiple reasons, there was no realistic chance of another country accepting them. *See* 533 U.S. at 684–85, 686. Here in contrast, there is every reason to expect that, if the Circuit denies him relief, Portillo will

promptly and successfully be removed. The United States regularly removes noncitizens to Honduras—as shown by its prior removals of Portillo himself—and has represented that it stands ready to remove Portillo again once the proceedings pending in the Circuit are removed as an obstacle. And although Portillo may rue the appellate timetable, he cannot bootstrap from the proceedings in the Circuit that he initiated an argument that his removal has been so delayed as to warrant his release. *See generally Zheng*, 618 F. App'x 26; *Abimbola*, 181 F. App'x 97; *Agoro*, 2010 WL 9976.

Accordingly, Portillo has not established that his removal is unlikely in the reasonably foreseeable future. And even assuming he had made such a showing, the Government's showing as to why he remains detained—out of respect for the proceedings pending in the Circuit which Portillo initiated—would have convincingly rebutted it.

### B.  Constitutional Challenges

Portillo also challenges his detention on substantive and procedural due process grounds, under the Fifth Amendment. Neither claim succeeds.

Portillo's substantive due process claim asserts that, because his removal is not reasonably foreseeable, his Fifth Amendment rights have been violated. The Court has already rejected the premise of that claim, finding that Portillo's removal *is* reasonably foreseeable. That defeats Portillo's Fifth Amendment claim, as the Second Circuit has held that under *Zadvydas*, a noncitizen's "due process rights are not jeopardized by his continued detention as long as his removal remains reasonably foreseeable." *Wang*, 320 F.3d at 146; *see also Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991) ("Although this litigation strategy is perfectly permissible, we hold that Doherty may not rely on the extra time resulting therefrom to claim that his prolonged detention violates substantive due process.") (citing *INS v. Rios-Pineda*, 471

U.S. 444, 450 (1985) ("The purpose of an appeal [from a] . . . determination of deportability . . . is not to permit an indefinite stalling of physical departure in the hope of eventually satisfying legal prerequisites.")).

Portillo's procedural due process claim assails the administrative framework governing his detention. He argues that (1) he has been denied "a timely and meaningful opportunity to demonstrate that he should not be detained," Pet. ¶ 31; (2) the Government has "failed to acknowledge or act upon [his] administrative request for release in a timely manner," id.; and (3) because administrative review of ICE's decisions to deny his July 19 and November 16, 2021 requests for release is not available, he has been unlawfully deprived of a neutral decisionmaker to review his continued detention, id. (citing 8 C.F.R. § 241.13).[7]

Those arguments do not carry the day. Insofar as Portillo is challenging, as a general matter, the immigration framework pursuant to which he has been detained pending resolution of his petition in the Second Circuit, courts across the country have routinely upheld its constitutionality. See, e.g., Rodriguez Del Rio v. Price, No. 20 Civ. 217, 2020 WL 7680560, at *4 (W.D. Tex. Nov. 3, 2020) (habeas petitioner's procedural due process rights were not violated on account of the Government's satisfaction of its "custody review obligations under 8 C.F.R. § 241.4"); Robinson v. Dist. Dir. for ICE, No. 09 Civ. 637, 2009 WL 3366439, at *6 (M.D. Pa. Oct. 19, 2009) ("[W]e find no merit to Petitioner's second claim that the [Post Order Custody

---

[7] Portillo's petition is not pellucid as to the basis of his claim that he has been unlawfully deprived of a neutral decisionmaker. However, his citation to 8 C.F.R. § 241.13—in conjunction with the claim that the Government failed "to provide a neutral decision-maker *to review* his continued detention" (emphasis added)—suggests that he challenges the regulatory elimination of administrative review of the denials of his July 19 and November 16, 2021 requests for release, which were submitted under that regulation. See id. 241.13(g)(2) ("There is no administrative appeal from the . . . decision denying a request from an alien under this section.").

Review] process violates procedural and substantive due process."); *Joseph v. Dep't of Homeland Sec.*, No. 05 Civ. 5233, 2006 WL 1644875, at *4 (D.N.J. June 12, 2006) ("Petitioner is not entitled to any greater custody reviews than that which the [the Government] has already provided him."). Portillo does not cite legal authority in support of his generalized laments about the administrative process.[8] He has not provided any basis to void as unconstitutional, facially or as applied to him, the processes Congress and the executive branch have put in place to govern the detention of removable noncitizens.

Portillo also claims that he has been unlawfully deprived of a neutral decisionmaker by virtue of further review of ICE officials' decisions to deny his July 19 and November 16, 2021 requests for release. That argument also fails. Portillo does not articulate any basis to assail these officials as biased, or to overcome the general "presumption of honesty and integrity in those serving as [administrative] adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *see also Marcello v. Bonds*, 349 U.S. 302, 311 (1955) ("The contention [of bias given the Immigration Service's being charged with investigative and prosecuting functions] is without substance when considered against the long-standing practice in deportation proceedings, judicially approved in numerous decisions in the federal courts, and against the special considerations applicable to deportation which the Congress may take into account in exercising its particularly broad discretion in immigration matters."). Nor does the absence of further review within the agency mean that he has thus far been deprived of a neutral decisionmaker.

Nor has Portillo provided case authority for his claim that the regulatory bar to review—subject to *Zadvydas* and 8 U.S.C. § 2241—of discretionary executive decisions to deny a release

---

[8] For instance, Portillo derides the legal framework governing his detention as "flimsy at best," "lack[ing in] any oversight whatsoever," and "frankly tendentious." Reply at 6.

request of a noncitizen in custody during his challenge to a removal order violates due process.
The regulation providing that there is no administrative appeal from an agency decision denying
a request for release, 8 C.F.R. § 241.13(g)(2), has consistently withstood procedural due process
challenges.[9]

Finally, to the extent Portillo suggests that the statutory and regulatory framework at
issue has been errantly applied to him, on the record before the Court, there is no factual basis to
so assert. It is undisputed that ICE has conducted the necessary periodic reviews of Portillo's
detention. It timely conducted both its 90-day and 180-day post-order custody review. And it
served on Portillo its final decisions denying release. Pardo-Figueroa Decl. ¶ 18; Dkt. 9-1. The
Government has also resolved each of Portillo's additional requests for release no more than 10
days after receiving it. *See* Pardo-Figueroa Decl. ¶¶ 19, 21.

---

[9] *See, e.g., Nasr v. Larocca*, No. 16 Civ. 1673, 2016 WL 3710200, at *6 (C.D. Cal. June 1,
2016), *report and recommendation adopted*, 2016 WL 3704675 (C.D. Cal. July 11, 2016)
(denying procedural due process challenge to absence of administrative mechanism to test the
validity of a continued detention determination under 8 C.F.R. § 241.13(g)(2)); *see also Royer v.
Holder*, 12 Civ. 1319, 2012 WL 6553114, at *2 (M.D. Fla. Dec. 14, 2012) (requiring petitioner
to exhaust administrative remedies, to wit, requesting release under 8 C.F.R. § 241.13, before
filing habeas challenge in federal court); *Meighan v. Chertoff*, 08 Civ. 1222, 2008 WL 1995374
(S.D. Tex. May 6, 2008) (same); *Quitana Casillas v. Sessions*, 17 Civ. 1039, 2017 WL 3088346,
at *9 (D. Colo. July 20, 2017) (same and citing cases); *Rene v. Secretary of Dep't of Homeland
Sec.*, No. 06 Civ. 336, 2007 WL 708905, at *5 (D.N.J. Mar. 5, 2007) ("[S]ince Petitioner is not
entitled to release under *Zadvydas*, he is not entitled to [release] even if he could establish due
process violations."); *Idowu v. Ridge*, No. 03 Civ. 1293, 2003 WL 21805198, at *4–5 (N.D. Tex.
Aug. 4, 2003) ("When no substantive due process violation has been established, release from
detention seems an inappropriate remedy for alleged violations of the procedural protections
afforded removable aliens such as petitioner."). To the extent Portillo means to challenge
substantively the agency's determination that his continued detention is warranted because his
criminal and immigration history makes him an "enforcement priority," the Court would not
have jurisdiction to review that exercise of agency discretion. *See* 8 U.S.C. § 1252(a)(2)(B)(ii)
("[N]o court shall have discretion to review . . . any other decision or action of the Attorney
General or the Secretary of Homeland Security the authority for which is specified under this
subchapter to be in the discretion of the Attorney General or the Secretary of Homeland
Security.").

For these reasons, the Court rejects as baseless Portillo's procedural challenges to the agency's determination that his detention has been warranted during the pendency of his challenges to ICE's removal order.

Accordingly, the Court rejects Portillo's constitutional challenges to his detention.

## CONCLUSION

For the foregoing reasons, the Court denies the petition for a writ of habeas corpus.  The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: March 18, 2022
       New York, New York